THE STATE OF OHIO, APPELLANT AND CROSS-APPELLEE, *v.* CASALICCHIO, APPELLEE AND CROSS-APPELLANT.

[Cite as State *v.* Casalicchio (1991), 58 Ohio St. 3d 178.]

(No. 89-1865—Submitted November 20, 1990—Decided April 3, 1991.)

*Stephanie Tubbs Jones,* prosecuting attorney, and *David Zimmerman,* for appellant and cross-appellee.

*Paul Mancino, Jr.,* for appellee and cross-appellant.

WRIGHT, J. The state asserts that Casalicchio's automobile falls within Ohio's contraband forfeiture statutes

and the trial court's action was proper in all respects. Casalicchio raises several constitutional challenges to the forfeiture statutes on cross-appeal, challenging them on their face and as applied in this case. The state's and Casalicchio's assertions require a significant review of R.C. 2933.42 and R.C. 2933.43, Ohio's contraband forfeiture statutes.

## I

Initially, Casalicchio challenges on due process grounds the scope of the forfeiture statutes. Specifically, he questions whether his automobile is constitutionally subject to forfeiture when it bears no substantial relationship to the underlying crimes for which he was convicted. Casalicchio also argues that even if constitutional strictures do not prevent a forfeiture statute from reaching his automobile under these facts, nevertheless, R.C. 2933.42 and 2933.43 are void for vagueness under the Fourteenth Amendment. Casalicchio argues that he was not put on notice by R.C. 2933.42 and 2933.43 that his vehicle was subject to forfeiture. At the outset, we address Casalicchio's attack on the clarity of these statutes.

The 1986 amendments to the Revised Code contained in Am. Sub. S.B. No. 69, 141 Ohio Laws, Part I, 173, restructured Ohio's laws governing forfeitures. See Legislative Service Commission Analysis, Sub. S.B. No. 69 (1985). This legislation greatly expanded the definition of "contraband" and detailed the procedure for the seizure, forfeiture, and disposition of contraband. See R.C. 2901.01(M)(8), 2933.42, and 2933.43. Casalicchio contends that R.C. 2933.42 and 2933.43 should be limited to contraband that is either illegal to possess or is legal to possess but is subject to forfeiture because it was employed in the commission of a crime. This interpretation ignores the plain meaning of R.C. 2933.42.

R.C. 2901.01(M) defines "contraband," in part, as "[a]ny personal property that has been, is being, or is intended to be used in an attempt or conspiracy to commit, or in the commission of, any offense or in the transportation of the fruits of any offense[.]" R.C. 2901.01(M)(8). Casalicchio's automobile falls within this definition of "contraband." However, R.C. 2933.42 expands this definition of "contraband" so as to leave no question that Casalicchio's automobile is contraband. R.C. 2933.42 reads:

"(A) No person shall possess, conceal, transport, receive, purchase, sell, lease, rent, or otherwise transfer any contraband.

"(B) For purposes of section 2933.43 of the Revised Code, if a watercraft, motor vehicle, aircraft, or other personal property that is not within the scope of the definition of contraband in section 2901.01 of the Revised Code is used in a violation of division (A) of this section, the watercraft, motor vehicle, aircraft, or personal property is contraband and, if the underlying offense involved in the violation of division (A) of this section is a felony, is subject to seizure and forfeiture pursuant to section 2933.43 of the Revised Code. It is rebuttably presumed that a watercraft, motor vehicle, aircraft, or other personal property in or on which contraband is found at the time of seizure has been, is being, or is intended to be used in a violation of division (A) of this section."

Casalicchio possessed and transported cocaine and a cocaine inhaler in his automobile. The cocaine is contraband as a controlled substance pursuant to R.C. 2901.01(M)(5), which states that controlled substances are

contraband.[1] Further, pursuant to R.C. 2925.11, possession of cocaine is a felony. In addition, the cocaine inhaler is contraband pursuant to R.C. 2901.01(M)(8) and its possession is also a felony pursuant to R.C. 2923.24. Because the cocaine and the cocaine inhaler constitute contraband involving felonies, and because they were possessed and transported in a motor vehicle, the motor vehicle is contraband pursuant to R.C. 2933.42. Accordingly, Casalicchio's automobile was subject to forfeiture pursuant to R.C. 2933.43(C), which states: "* * * property shall be forfeited upon a showing by a preponderance of the evidence by the petitioner that the person from which the property was seized was in violation of division (A) of section 2933.42 of the Revised Code. * * *" Manifestly, the forfeiture provisions apply to Casalicchio's automobile and neither R.C. 2933.42 nor 2933.43 is void for vagueness.

Casalicchio also challenges these provisions for exceeding the bounds of due process because of the breadth of their scope. Particularly, Casalicchio asserts that because his automobile bears no substantial relationship to the underlying criminal offenses for which he was convicted, due process bars forfeiture of his automobile. This argument fails.

The United States and Ohio alike have long used forfeiture as a weapon against criminal behavior and public nuisances. See *Ohio Dept. of Natural Resources* v. *Prescott* (1989), 42 Ohio St. 3d 65, 67-68, 537 N.E. 2d 204, 206-207; *Calero-Toledo* v. *Pearson Yacht Leasing Co.* (1974), 416 U.S. 663, 680-685; *United States* v. *Seifuddin* (C.A. 9, 1987), 820 F. 2d 1074, 1076-1077. An item may be forfeited because the item itself is unlawful to possess, or an item may be forfeited because of its connection to unlawful activity. The extent of the connection need not be great. Casalicchio's automobile was connected to an illegal activity in that it was used to possess and transport property that was felonious to possess.

A similar federal statute provides for similar forfeitures. In *United States* v. *One 1982 28' Internatl. Vessel* (C.A. 11, 1984), 741 F. 2d 1319, the court was confronted with a challenge to a forfeiture under Sections 781 and 782, Title 49, U.S. Code. Section 781 makes it unlawful to transport contraband while Section 782 provides for the forfeiture of any "vessel, vehicle, or aircraft" used in violation of Section 781.[2] *Internatl. Vessel* held that because marijuana is contraband, the discovery of trace amounts of marijuana upon an oceangoing vessel warranted forfeiture of the vessel. Specifically, the court held that there need be no particular criminal purpose to the transportation of the contraband and stated, "* * * the statute is silent as to the purpose for such transportation, and so no particular purpose need be shown." *Id.* at 1322.

---

[1] R.C. 3719.01(D) and (FF) state that a controlled substance is any substance listed in the schedules established by R.C. 3719.41. Cocaine is listed in Schedule II(A)(4) of R.C. 3719.41.

[2] Section 781, Title 49, U.S. Code provides in part:

"(a) It shall be unlawful (1) to transport, carry, or convey any contraband article in, upon, or by any means of any vessel, vehicle, or aircraft * * *."

Section 782 provides in part:

"Any vessel, vehicle, or aircraft which has been or is being used in violation of any provision of section 781 of this title, or in, upon, or by means of which any violation of said section has taken or is taking place, shall be seized and forfeited * * *."

Accord *United States* v. *Premises Known as 3639-2nd St., N.E.* (C.A.8, 1989), 869 F. 2d 1093; *United States* v. *One 1976 Porsche 911S* (C.A.9, 1979), 670 F. 2d 810. See, also, *Calero-Toledo, supra,* upholding a Puerto Rican forfeiture statute upon similar facts but subject to a different challenge. These cases required only that a vehicle, vessel, or house contain contraband in order to warrant forfeiture. Such are the undisputed facts in the case at bar. We hold that R.C. 2933.42 and 2933.43 are constitutional in their clarity and scope, and Casalicchio's automobile falls within their purview.

## II

We next address three of Casalicchio's assertions that challenge the civil nature of the forfeiture proceedings. Specifically, Casalicchio urges that any forfeiture proceeding against his automobile is criminal and as such the state must prove the facts establishing forfeiture beyond a reasonable doubt. Accordingly, Casalicchio asserts that the evidentiary presumption in R.C. 2933.42(B) fails to satisfy the constitutional requirement of proof beyond a reasonable doubt in a criminal proceeding. Lastly, Casalicchio challenges the acceptance of his plea of no contest because he was unaware of the additional penalty of forfeiture at the time his plea was entered. Seemingly, each of these three challenges attacks the civil nature of the forfeiture proceedings. However, in reality, only the challenge to the acceptance of Casalicchio's plea properly calls into question whether the forfeiture of Casalicchio's automobile is a civil or a criminal penalty.

Casalicchio's attack on the standard of proof found in R.C. 2933.43 fails because, even if this forfeiture is a criminal penalty, proof by a preponderance of the evidence is appropriate at the sentencing stage of a criminal proceeding. *McMillan* v. *Pennsylvania* (1986), 477 U.S. 79, 84; *United States* v. *Sandini* (C.A.3, 1987), 816 F. 2d 869, 875-876. Further, a presumption in favor of forfeiture is constitutional under the preponderance-of-the-evidence standard, provided that the fact presumed rationally relates to the facts necessary to establish the presumption. *Id.* at 876.[3] The evidentiary presumption in R.C. 2933.42(B) rationally relates to the facts necessary to establish the presumption and as such is constitutional, because finding contraband in a vehicle reasonably leads to the conclusion that the vehicle was used in violation of R.C. 2933.42(A).

Casalicchio's challenge to the voluntariness of his plea questions whether the forfeiture of his automobile is a civil or criminal penalty. Ohio has generally considered forfeiture proceedings to be civil actions. *Prescott, supra,* at 68, 537 N.E. 2d at 207; *Sensenbrenner* v. *Crosby* (1974), 37 Ohio St. 2d 43, 45, 66 O.O.

---

[3] *Sandini* reviewed the constitutionality of Section 853(d), Title 21, U.S. Code, which reads:

"There is a rebuttable presumption at trial that any property of a person convicted of a felony under this subchapter or subchapter II of this chapter is subject to forfeiture under this section if the United States establishes by a preponderance of the evidence that—

"(1) such property was acquired by such person during the period of the violation of this subchapter or subchapter II of this chapter or within a reasonable time after such period; and

"(2) there was no likely source for such property other than the violation of this subchapter or subchapter II of this chapter."

2d 106, 107, 306 N.E. 2d 413, 415; but, see, *State* v. *Lilliock* (1982), 70 Ohio St. 2d 23, 25, 24 O.O. 3d 64, 65, 434 N.E. 2d 723, 724, reversing a forfeiture under former R.C. 2933.41, stating "* * * that a proceeding under [former] R.C. 2933.41 is criminal in nature, but civil in form * * *." Federal courts have also treated most forfeitures as civil penalties. See, *e.g.*, *United States* v. *One Assortment of 89 Firearms* (1984), 465 U.S. 354; *One Lot Emerald Cut Stones & One Ring* v. *United States* (1972), 409 U.S. 232; *Helvering* v. *Mitchell* (1938), 303 U.S. 391. However, forfeitures are not inherently civil penalties; rather, whether a forfeiture is a civil rather than a criminal penalty is a matter of statutory construction. *One Assortment of Firearms, supra,* at 362; *One Lot of Emerald Cut Stones, supra,* at 237; *Mitchell, supra,* at 399. The United States Supreme Court has provided guidelines in determining whether a statutory penalty is remedial and therefore civil, or punitive and therefore criminal:

"* * * Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as punishment, whether it comes into play only on a finding of *scienter,* whether its operation will promote the traditional aims of punishment — retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry, and may point in differing directions. * * *" (Footnotes deleted.) *Kennedy* v. *Mendoza-Martinez* (1963), 372 U.S. 144, 168-169. See, also, *United States* v. *Ward* (1980), 448 U.S. 242, 249, approving of these considerations but

declaring them "neither exhaustive nor dispositive."

Applying the *Mendoza-Martinez* considerations to the case before us reveals the accuracy of the prediction that a review of these considerations "may point in differing directions," as this case presents us with a traditionally civil remedy employed in a particularly criminal context. Although this forfeiture attaches to criminal behavior and appears to serve the traditionally criminal purposes of punishment and deterrence, the state may provide both civil and criminal penalties for the same conduct. *Prescott, supra,* at 68, 537 N.E. 2d at 207; *One Assortment of Firearms, supra,* at 359. *Prescott* is the most instructive Ohio case in our analysis as it involved a similar challenge to the forfeiture provisions of R.C. 1531.20. R.C. 1531.20 provides for forfeiture of any device "used in the unlawful taking of wild animals." In holding that R.C. 1531.20 provided a civil penalty, we found it relevant that the forfeiture provisions did not require a criminal conviction and could . be brought against property even though a third party and not the property owner unlawfully utilized the property. *Prescott, supra,* at 67, 537 N.E. 2d at 207. Forfeiture of R.C. 2933.42(B) contraband pursuant to R.C. 2933.43, however, requires a conviction for a felony prior to forfeiture and insulates innocent lien holders and property owners from loss. R.C. 2933.43(C). Both of these characteristics strongly suggest that the forfeiture in the context of this case is intended as a penalty for the underlying felony. See *Seifuddin, supra,* at 1078. Thus, we must hold that where property is ruled contraband pursuant to R.C. 2933.42(B), forfeiture of that property pursuant to R.C. 2933.43 constitutes a separate criminal penalty in addition to

the penalty the defendant faces for conviction of the underlying felony.

Because the forfeiture of Casalicchio's automobile is an additional criminal penalty that the state failed to seek *prior* to sentencing, the forfeiture violates both the Ohio and the federal Constitutions. The Double Jeopardy Clauses of both Constitutions forbid punishing a defendant twice for the same offense. Section 10, Article I, Ohio Constitution; the Fifth Amendment to the United States Constitution. See *State* v. *Beasley* (1984), 14 Ohio St. 3d 74, 14 OBR 511, 471 N.E. 2d 774; *United States* v. *Halper* (1989), 490 U.S. 435. Consequently, the Double Jeopardy Clauses bar the state from seeking a new penalty to a crime after a defendant has been sentenced for that crime. *Beasley, supra; Halper, supra;* see, also, *United States* v. *DiFrancesco* (1980), 449 U.S. 117. Accordingly, the state was barred from seeking forfeiture in this case.[4]

For the foregoing reasons, the judgment of the court of appeals is affirmed, albeit for different reasons than expressed by that tribunal.

*Judgment affirmed.*

SWEENEY, HOLMES and H. BROWN, JJ., concur.

MOYER, C.J., concurs in judgment only.

DOUGLAS, J., concurs separately.

RESNICK, J., concurs in part and dissents in part.

DOUGLAS, J., concurring. I concur in the judgment of the majority. I do so never having to reach the issues discussed by the majority. While those issues are interesting, and in part may be even accurately discussed, the fact is that R.C. 2933.43(C) provides, in part, that "* * * a *forfeiture hearing shall* be held in such a case [where the property seized was determined by the seizing law enforcement officer to be contraband because of its relationship to an underlying criminal offense] *no later than thirty days* after the plea of guilty, *the conviction,* or the admission or adjudication of the violation. * * *" (Emphasis added.)

The defendant here was *convicted* on October 29, 1987. The *hearing* on the petition for forfeiture was held on January 21, 1988. Since the hearing was not held within the prescribed thirty-day period, the statute was not complied with and the defendant wins. This is so even though I believe, under the circumstances of this case, that the

---

[4] Although Casalicchio has never specifically raised the issue of double jeopardy in this case, he has steadfastly maintained the unconstitutionality of the forfeiture of his automobile. In addition, Casalicchio's claim that his plea of no contest was involuntarily entered because he was not informed of the possibility of the forfeiture of his car puts the criminal nature of the forfeiture directly at issue.

Crim. R. 11(C)(2)(a) requires that the court inform the defendant of the maximum possible penalty to which the defendant is subject prior to accepting defendant's plea.

Federal case law interpreting Fed. R. Crim. P. 11 requires that the defendant be informed of "the definite, immediate and automatic consequences of his plea" and not the "range of civil penalties or judgments he may face * * *." *United States* v. *Suter* (C.A. 7, 1985), 755 F. 2d 523, 525. As such, Casalicchio's attack on his plea asserts the criminal nature of the forfeiture penalty.

While Casalicchio is correct that there is a problem with his plea, that problem yields to the more profound constitutional violation of double jeopardy.

automobile, as contemplated by the statute, was clearly contraband.

The forfeiture statute is strong, but needed, medicine. Because of the endless possibilities of how the statute can be used by law enforcement agencies, the General Assembly obviously meant that certain procedural safeguards be followed. If those time-limit safeguards are not followed, then, said the legislature, forfeiture may not take place. We should enforce, in this regard, the will of the legislative body.

ALICE ROBIE RESNICK, J., concurring in part and dissenting in part. I concur in the judgment, but emphatically dissent from the majority opinion as it does not adequately address the issues raised by appellee's cross-appeal. Moreover, in an attempt to engage in an analysis of these issues, the majority confuses and distorts the issues beyond recognition. Indeed, the majority decides this case on double jeopardy grounds despite the fact that this issue has never been raised by the appellee; nor has its application to this case been argued on the merits in the trial court, the court of appeals or this court. It is inappropriate for this court to decide the merits of this case on the basis of double jeopardy since neither party had the opportunity to brief this issue.

Thus, before this court undertakes to decide the present case on double jeopardy grounds, and given the broad impact the majority's decision will have on drug enforcement in this state, we should provide both the state and appellee an opportunity to address this issue. While I find the issue of double jeopardy totally inapplicable to this case, I am compelled, however, to address this issue and the basic question of whether forfeiture is civil or criminal in nature.

I

I will begin by considering the

most astonishing aspect of the majority opinion, which is whether the Double Jeopardy Clauses of the Ohio and United States Constitutions prohibit the forfeiture of appellee's vehicle as a second criminal punishment for the same offense. Remarkably, the majority holds that "[b]ecause the forfeiture of * * * [appellee's] automobile is an additional criminal penalty that the state failed to seek *prior* to sentencing, the forfeiture violates both the Ohio and the federal Constitutions." The flaw in this holding lies in the initial determination that the forfeiture of appellee's auto is a criminal penalty. I adopt the holding of the court of appeals below wherein it stated, "[i]t is well settled that a forfeiture proceeding is a civil *in rem* proceeding independent of any factually related criminal actions. In matters such as the present case involving a disposition of property not in itself inherently unlawful, a separate civil proceeding with the rules of civil procedure applied comports with the requirements of due process. *Chagrin Falls* v. *Loveman* (1986), 34 Ohio App. 3d 212, 216; *State* v. *Lilliock* (1982), 70 Ohio St. 2d 23."

In addition, the United States Supreme Court has consistently held that the Double Jeopardy Clause protects a criminal defendant in three ways from: "a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *United States* v. *Halper* (1989), 490 U.S. 435, 440. Of the three protections afforded under the Double Jeopardy Clause, the one at issue in this case is the prohibition against multiple *criminal* punishments. See *Helvering* v. *Mitchell* (1938), 303 U.S. 391, 399; see, also, *United States* v. *Ward* (1980), 448 U.S. 242, 248. Thus, the Double Jeopardy Clause is applicable to this

case only if the forfeiture of appellee's automobile is a criminal penalty, and not a civil remedy.

"Unless the forfeiture sanction was intended as punishment, so that the proceeding is essentially criminal in character, the Double Jeopardy Clause is not applicable. *Helvering* v. *Mitchell,* 303 U.S., at 398-399. The question, then, is whether a * * * forfeiture proceeding is intended to be, or by its nature necessarily is, criminal and punitive, or civil and remedial. Resolution of this question begins as a matter of statutory interpretation." *United States* v. *One Assortment of 89 Firearms* (1984), 465 U.S. 354, 362. In *One Assortment of Firearms, supra,* the court addressed an argument that a particular forfeiture of firearms under a federal statute was barred by the Double Jeopardy Clause. Therein, the United States Supreme Court employed a two-tiered analysis to determine whether the forfeiture was a second criminal penalty. Quoting *United States* v. *Ward, supra,* the court at 362-363 set forth the appropriate test as follows: " 'Our inquiry in this regard has traditionally proceeded on two levels. First, we have set out to determine whether Congress, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. See *One Lot Emerald Cut Stones* v. *United States* [(1972), 409 U.S. 232], *supra,* at 236-237. Second, where Congress has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention. * * *' "

### A

In its apparent zeal to find that the forfeiture in this case is a second criminal sanction, the majority brushes aside the first inquiry. According to the test set forth above, it must initially be determined whether the preference of the General Assembly was to create a criminal or civil sanction. Upon examining R.C. 2933.42 and 2933.43, it is clear that the General Assembly designed a forfeiture under these statutes to be a remedial civil sanction.

R.C. 2933.43(C), on its very face, provides as follows: "Where possible, a court holding a forfeiture hearing under this section *shall follow the rules of civil procedure.* When a hearing is conducted under this section, property shall be forfeited upon a showing by a preponderance of the evidence by the petitioner that the person from which the property was seized was in violation of division (A) of section 2933.42 of the Revised Code." (Emphasis added.) Thus, the intent of the General Assembly is clearly indicated that forfeiture proceedings under the statutes at issue are to be conducted, where possible, under the Rules of Civil Procedure. The qualification "where possible" is ostensibly meant to cover situations where the forfeiture hearing is not separate from, but is concomitant to, the underlying criminal case. Likewise, in stating that the preponderance-of-the-evidence standard is to be used, the General Assembly further indicated the civil nature of the forfeiture proceedings under R.C. 2933.42 and 2933.43. By creating specific notice requirements and procedural measures throughout R.C. 2933.43, and by providing for a separate forfeiture hearing, the General Assembly has further signified the civil remedy aspect of the forfeiture proceedings as opposed to a forfeiture being a criminal penalty.

Lastly, R.C. 2933.43(D) points to the remedial nature of the statutory scheme at issue. Therein, the General Assembly sets forth the method for the distribution of proceeds from the sale

of property forfeited pursuant to R.C. 2933.43. A cursory review of this portion of the statute reveals that the General Assembly is merely trying to recover the costs incurred in enforcing, investigating and prosecuting the drug laws of this state. Drug trafficking and drug abuse have reached epidemic proportions in Ohio, and indeed the nation. The General Assembly devised this forfeiture procedure to assist law enforcement agencies in the war against drugs. There is no logical basis for the majority's holding, which in effect would strip law enforcement agencies of these funds. It is shocking, therefore, to consider the ramifications of today's opinion. The broad holding sanctioned today, incorrectly reached, cannot be justified. For all the foregoing reasons, I conclude that the General Assembly drafted the forfeiture procedures under R.C. 2933.43 to be civil sanctions.

### B

Having determined that the General Assembly intended to establish a civil remedy, the second inquiry is "whether the statutory scheme was so punitive either in purpose or effect as to negate that intention." *Ward, supra,* at 248-249. It must be recognized that in applying this analysis, the United States Supreme Court has stated that " '[o]nly the clearest proof' that the purpose and effect of the forfeiture are punitive will suffice to override Congress' manifest preference for a civil sanction. * * *" (Citations omitted.) *One Assortment of Firearms, supra,* at 365. When employing this second prong, the court in both *Ward* and *One Assortment of Firearms* used a list of factors first enunciated in *Kennedy* v. *Mendoza-Martinez* (1963), 372 U.S. 144, 168-169.

The majority lists these factors,

then purports to apply them to the present case. However, the majority, after paying them lip service, reaches an unreasonable result. Indeed, none of the foregoing factors supports the determination that the forfeiture in this case is a criminal penalty. As stated above only the clearest proof will suffice to negate the General Assembly's intention that the forfeiture is civil in nature.

The majority relies on two grounds to hold that this forfeiture is a separate criminal penalty. First, it is noted that R.C. 2933.43 requires a felony conviction prior to a forfeiture. Second, the majority states that "innocent lien holders and property owners [are insulated] from loss." Both of these assertions are correct, but do they constitute the "clearest proof" that the forfeiture is a criminal penalty, as required by the United States Supreme Court? That query must be answered in the negative. Moreover, I would posit that by requiring a felony conviction prior to forfeiture, the General Assembly sought to avoid due process problems. The same reasoning applies to the protection of innocent third parties. The majority puts forth no lawful basis upon which it can be determined that the forfeiture proceeding is a criminal penalty.

### II

As previously noted, the majority misconstrues the issues raised by appellee's cross-appeal. In his second proposition of law, appellee challenges the validity of his no contest pleas to the underlying felonies with which he was charged: possession of a controlled substance, cocaine, in violation of R.C. 2925.11; and possession of a criminal tool, in violation of R.C. 2923.24. Appellee contends that he was not aware that his automobile was subject to forfeiture when he pled no contest.

Therefore, appellee asserts his pleas of no contest were not voluntary. The majority states that appellee's challenge to the voluntariness of his pleas "questions whether the forfeiture of his automobile is a civil or criminal penalty." Nothing could be farther from the truth. Appellee attacks his pleas on voluntariness and due process grounds. Appellee will indeed be surprised to find how magnanimous the majority has been in interpreting his arguments.

Crim. R. 11(C)(2) governs the trial court's acceptance of a no contest plea, and provides as follows:

"In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept such plea without first addressing the defendant personally and:

"(a) Determining that he is making the plea voluntarily, with the understanding of the nature of the charge and of the maximum penalty involved, and if applicable, that he is not eligible for probation.

"(b) Informing him of and determining that he understands the effect of his plea of guilty or no contest, and that the court upon acceptance may proceed with judgment and sentence.

"(c) Informing him and determining that he understands that by his plea he is waiving the rights to a jury trial, to confront witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to require the state to prove his guilt beyond a reasonable doubt at a trial at which he cannot be compelled to testify against himself."

Thus, even assuming *arguendo* that the forfeiture of appellee's auto is a criminal penalty, the trial court was under no requirement to inform appellee that his car would be subject to forfeiture. Crim. R. 11(C) simply does not address forfeitures. As a result, the trial court's acceptance of appellee's pleas was entirely proper. This is even more compelling since there is not a scintilla of evidence in the record evidencing that Crim. R. 11(C) was not complied with by the trial judge. More importantly, since the forfeiture of appellee's auto was civil in nature, the trial court was under no duty to inform appellee that his car was subject to forfeiture. Hence, the majority's characterization of the issue is analytically unsound regardless of whether the forfeiture is civil or criminal. Appellee's argument that his pleas of no contest were not voluntary is likewise without merit.

In his third proposition of law, appellee asserts that the forfeiture of his auto was improper because the state did not timely file the forfeiture petition as required by R.C. 2933.43. Therefore, appellee contends that since the petition was not timely filed, it should have been dismissed. Appellee was arrested and his auto seized on August 25, 1987. He pled no contest to two felonies on October 22, 1987 (entry filed October 29, 1987). Appellee was sentenced in open court on November 20, 1987 (entry filed November 25, 1987). On November 23, 1987, three days after sentencing, the state filed a petition for forfeiture of appellee's automobile. Thus, the forfeiture petition was filed just under three months after the seizure of appellee's auto, and three days after he was sentenced in open court.

R.C. 2933.43(C) states as follows:

"*Upon the seizure* of contraband pursuant to division (A) of this section, the prosecuting attorney, village solicitor, city director of law, or similar chief legal officer who has responsibility for the prosecution of the underlying criminal case or administrative proceeding, or the attorney general if the attorney general has such respon-

sibility, *shall* file a petition for the forfeiture, to the seizing law enforcement agency, of the seized contraband. The petition shall be filed in the court of common pleas of the county that has jurisdiction over the underlying criminal case or administrative proceeding involved in the forfeiture. * * *" (Emphasis added.)

In *State* v. *Baumholtz* (1990), 50 Ohio St. 3d 198, 553 N.E. 2d 635, we addressed the issue of the time within which a forfeiture petition must be filed pursuant to R.C. 2933.43(C). Therein, we held at the syllabus:

"1. A forfeiture petition is required to be filed within a reasonable time upon the seizure of property under R.C. 2933.43.

"2. In ascertaining whether the state has filed the forfeiture petition within a reasonable time, the following four factors must be considered: (1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant."

Upon applying these factors to the present case, it is clear that the forfeiture petition was not filed in a timely manner under R.C. 2933.43 and our holding in *Baumholtz, supra.* While *Baumholtz* was decided after the court of appeals rendered its opinion, the rationale in *Baumholtz* is fully applicable to this case as the issue of timely filing was raised below. Application of the analysis set forth in *Baumholtz* leads to the following conclusions: the length of delay in this case between seizure and filing a petition was slightly less than three months;

the record does not suggest any reason for the delay, nor does the record show appellee asserted his right to have the car returned to him. More important, in assessing prejudice to appellee we note that while a conviction is required prior to forfeiture — in this case appellee entered his pleas of no contest and was found guilty on October 22, 1987 and was sentenced in open court on November 20, 1987 — the petition was not *filed* until thirty-two days after conviction and three days after sentencing. Such a delay in *filing* a forfeiture petition cannot be justified, particularly in view of the fact that appellee's automobile clearly came within the definition of "contraband" in R.C. 2933.42(B). From the foregoing there is no question of prejudice to the defendant. It is clearly unreasonable for the state to wait more than a month after conviction, let alone nearly three months after seizure, to file a forfeiture petition. Thus, when balancing the four factors as required under *Baumholtz, supra,* the forfeiture petition was not filed within a reasonable time. Hence, it is untimely filed pursuant to R.C. 2933.43.

### III

In conclusion, the forfeiture procedure involved in this case is civil in nature and hence double jeopardy has no application. However, since the forfeiture petition was not filed within a reasonable period of time from the date of seizure, I would affirm the court of appeals but not for the reasons put forth by either the court of appeals or the majority in its opinion.