**The STATE of Ohio, Appellee,**

**v.**

**ADAMS, Appellant.**

[Cite as *State v. Adams* (1995), 105 Ohio App.3d 492.]

Court of Appeals of Ohio,
Second District, Darke County.

No. 1360.

Decided Aug. 4, 1995.

494

*Raymond M. Donadio, Jr.,* for appellee.

*Jeffrey Slyman,* for appellant.

FAIN, Judge.

Defendant-appellant, Joseph M. Adams, appeals from a judgment of forfeiture (of a bobcat carcass) pursuant to R.C. 2933.41(C). Adams contends that the forfeiture was a criminal and punitive sanction that violated his constitutionally guaranteed rights to protection from double jeopardy, because it was entered after the criminal complaint against him for possessing the illegally transported bobcat carcass had been dismissed on speedy trial grounds. Adams further contends that the trial court erred in concluding that the forfeiture motion was timely filed and in concluding that the possession of the bobcat carcass was unlawful. Finally, Adams contends that by failing to bring the forfeiture pursuant to R.C. 1531.02, the state is barred pursuant to R.C. 1.51 from pursuing a forfeiture under R.C. 2933.41.

We agree with Adams that the forfeiture of the bobcat carcass pursuant to R.C. 2933.41(C)(2) is punitive in nature. We also agree that principles of double jeopardy prohibited the state from pursuing the criminal forfeiture proceedings against Adams after the criminal complaint against him was dismissed based on the state's failure to adhere to speedy trial requirements. Accordingly, we conclude that the trial court erred in concluding that the forfeiture petition was not barred by the Double Jeopardy Clauses of Section 10, Article I of the Ohio Constitution and the Fifth Amendment to the United States Constitution. Therefore, the judgment of the trial court declaring the Florida bobcat carcass forfeited to the state is reversed and vacated.

I

The essential facts in this case are undisputed. In November 1991, Adams transported a bobcat carcass from Florida to Ohio. The parties have stipulated that the carcass is that of a Florida bobcat. Before taking the bobcat out of Florida, Adams failed to obtain an exportation tag, which is required under Florida law, in order to lawfully remove certain wildlife, including bobcats, as well as their carcasses from the state. After returning to Ohio, Adams took the carcass to a taxidermist, who later told the Ohio wildlife authorities of the existence of the untagged bobcat carcass. Some time in July 1993, the state of Ohio seized the bobcat carcass from the taxidermist because of an alleged violation of R.C. 1531.02. The carcass has remained in the possession of the state of Ohio since the date it was seized.

On August 5, 1993, the state of Ohio filed a misdemeanor citation against Adams for violating R.C. 1531.02 by possessing or transporting a bobcat carcass that had been "taken unlawfully outside the state." The trial court dismissed this criminal complaint on September 21, 1993, because of the state's failure to establish the necessary approval required under R.C. 1531.16 to pursue an indictment.

Subsequently, in November 1993, after the bobcat had been seized by the state of Ohio and after the first criminal complaint had been dismissed, Adams obtained a Florida exportation tag for the previously transported bobcat carcass through the mail from the Florida fish and game officials.

On October 14, 1993, the state of Ohio filed a new criminal complaint against Adams for the alleged violation of R.C. 1531.02. However, on March 11, 1994, pursuant to R.C. 2945.71 et seq., the trial court granted Adams's motion to dismiss the criminal complaint based on the state's failure to adhere to the speedy trial time requirements.

On May 16, 1994, the state filed a motion for forfeiture of property, pursuant to R.C. 2933.41(C)(2), in order to retain possession of the bobcat carcass. On July 15, 1994, after a hearing, the trial court overruled the arguments raised by Adams and granted the state's motion for forfeiture. The trial court's judgment entry, in pertinent part, provides:

"Prior to hearing the motion on its merits, [Adams] raised two grounds for denial, the first being double jeopardy and the second being an unreasonable delay in filing the motion. The court finds no merit in the first ground because [Adams] had not previously been subject to any criminal penalty in regard to the bobcat. Thus, double jeopardy cannot apply. Likewise, there is no merit in the second ground because Section 2933.41 does not mandate a time limit for its application and because [Adams] has failed to show how the delay between the

original dismissal of the criminal case and the filing of the motion for forfeiture caused him any disadvantage or hardship.

"On the merits of the case, the court finds that * * * Adams transported a Florida bobcat from Florida into Ohio in violation of Ohio's game laws because at the time of transportation [Adams] had neither a valid Florida possession tag nor a valid Florida out-of-state transportation tag. Thus, the initial and continuing possession of the bobcat in Ohio was illegal. The fact that the cat was an endangered species under Ohio law but not Florida law is not the key issue. The fact that [Adams] may have after-the-fact secured a Florida possession tag is no defense; first and foremost because the tag was secured after-the-fact and second because it was most probably secured based upon false pretenses. Therefore, it is the order of this court that the bobcat carcass be forfeited to the state to be disposed of as the state sees fit. This is a final appealable order."

From the judgment of forfeiture, Adams appeals.

## II

Adams's first assignment of error is as follows:

"The trial court erred in concluding that the appellee's forfeiture petition was not barred by operation of the Double Jeopardy Clauses of Section 10, Article I of the Ohio Constitution and the Fifth Amendment to the United States Constitution."

Adams contends that the dismissal of the criminal complaint on speedy trial grounds prohibits the state from pursuing any further punitive actions against him based on the act of possessing the bobcat carcass. He asserts that the forfeiture action pursued by the state pursuant to R.C. 2933.41 is criminal and punitive in nature, so that his right to protection from double jeopardy was violated when the trial court permitted the state to pursue the forfeiture proceeding after the criminal complaint against him had been dismissed.

The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and of Section 10, Article I of the Ohio Constitution protect an accused from multiple prosecutions and from multiple punishments for the same offense. *North Carolina v. Pearce* (1969), 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656; *State v. Thomas* (1980), 61 Ohio St.2d 254, 15 O.O.3d 262, 400 N.E.2d 897. The purpose of the Double Jeopardy Clause is to prohibit the state from seeking, in two or more separate proceedings, to impose punishment for a single offense. *United States v. $405,089.23 U.S. Currency* (C.A. 9, 1994), 33 F.3d 1210, 1215. Moreover, these protections apply with equal force whether the first prosecution results in a conviction or an acquittal. *Burks v. United States* (1978), 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1.

498

The Ohio General Assembly has dealt with the impact of the statutory speedy trial requirement on the double jeopardy prohibition in R.C. 2945.73. R.C. 2945.73(D) provides:

" * * * When an accused is discharged pursuant to division (B) [a discharge based on the state's failure to adhere to the speedy trial time requirements] * * *, such discharge is a bar to any further criminal proceedings against him based on the same conduct."

Hence, the dismissal of a criminal complaint for speedy trial violations amounts to a dismissal with prejudice, or an acquittal, and bars any further punitive actions by the state based on the same act or omission. See *State v. England* (1982), 8 Ohio App.3d 207, 8 OBR 149, 456 N.E.2d 544; *State v. Eberhardt* (1978), 56 Ohio App.2d 193, 10 O.O.3d 197, 381 N.E.2d 1357.

In the case before us, the trial court dismissed the complaint pursuant to R.C. 2945.73(B), based on the state's failure to bring the misdemeanor charge to trial within the forty-five-day time period prescribed by R.C. 2945.71(B)(1). Because the complaint was dismissed based on the state's failure to comply with speedy trial requirements, the dismissal of the complaint amounts to a dismissal with prejudice and acts as a bar to any further punitive proceedings based on the same conduct complained of in the original complaint. See R.C. 2945.73(D). Accordingly, we agree with Adams that the dismissal of the criminal complaint on speedy trial grounds acts as a bar to any further punitive proceedings against him based upon his alleged unlawful possession of the bobcat carcass.

Although the dismissal of the complaint bars further punitive proceedings against Adams, the dismissal does not necessarily act as a bar to *all* forfeiture proceedings. Principles of double jeopardy do not preclude the state from imposing a *civil* forfeiture remedy for the same conduct previously the subject of a criminal complaint. *Helvering v. Mitchell* (1938), 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917. Both the United States Supreme Court and the Ohio Supreme Court have previously explained that the legislature may impose a criminal *and* a civil sanction in respect to the same act or omission. *United States v. One Assortment of 89 Firearms* (1984), 465 U.S. 354, 359, 104 S.Ct. 1099, 1103, 79 L.Ed.2d 361, 366; *Ohio Dept. of Natural Resources, Div. of Wildlife v. Prescott* (1989), 42 Ohio St.3d 65, 68, 537 N.E.2d 204, 207. An acquittal on a criminal charge does not bar the state from pursuing any civil remedies based on the same conduct that formed the basis for the criminal charge. *Id.* Furthermore, a forfeiture proceeding can be classified as either a criminal and punitive sanction, or a civil and remedial sanction. See *State v. Casalicchio* (1991), 58 Ohio St.3d 178, 182, 569 N.E.2d 916, 920–921. Therefore, only a criminal

forfeiture would be barred by the dismissal of the criminal complaint against Adams.

In *State v. Lilliock* (1982), 70 Ohio St.2d 23, 24 O.O.3d 64, 434 N.E.2d 723, the Ohio Supreme Court concluded that the forfeiture sanction provided in the former version of R.C. 2933.41 was criminal and punitive in nature, although civil in form. However, since the *Lilliock* decision, R.C. 2933.41 has been rewritten by the legislature. The previous version of R.C. 2933.41(C) examined in *Lilliock* involved a two-part test that required a showing that (1) the property was used by the offender in an unlawful way; and (2) it was unlawful to acquire or to possess the property in light of the nature of the property or in light of the circumstances of the person. In contrast, the newer version of R.C. 2933.41(C) relied upon by the state in the case before us eliminates the requirement of showing that the property to be forfeited has been used in an unlawful way, and makes the forfeiture of property appropriate if any one of three enumerated conditions exists.

The version of R.C. 2933.41 utilized by the state in the case before us provided, in pertinent part, as follows:

"(A)(1) Any property * * * that has been lost, abandoned, stolen, seized pursuant to a search warrant, or otherwise lawfully seized or forfeited, and that is in the custody of a law enforcement agency, shall be kept safely pending the time it is no longer needed as evidence, and shall be disposed of pursuant to this section. * * *

" * * * *

"(C) A person loses any right he may have to the possession, or the possession and ownership, of property if any of the following applies:

"(1) The property was the subject, or was used in a conspiracy or attempt to commit, or in the commission, of an offense other than a traffic offense, and such person is a conspirator, accomplice, or offender with respect to the offense.

"(2) A court determines that the property should be forfeited because, in light of the nature of the property or the circumstances of such person, it is unlawful for the person to acquire or possess the property."

Under Section (C), the state is justified in denying a person's right to possess his property if any of the following conditions are met: (1) the property was the subject of a crime or was used in the commission of a crime, an attempt to commit a crime, or a conspiracy to commit a crime, R.C. 2933.41(C)(1); (2) a court determines that, in light of the nature of the property, it would be unlawful for a person to acquire or possess the property, R.C..2933.41(C)(2); or (3) a court determines that, in light of the nature of the circumstances surrounding the

property owner, it would be unlawful for the person to acquire or possess the property, R.C. 2933.41(C)(2).

Since this amendment to R.C. 2933.41, the issue of whether the forfeiture provision is criminal and punitive, or civil and remedial, has not been addressed. Therefore, in order for us to determine if the forfeiture action in this case is barred on double jeopardy grounds, we must first determine whether the procedure for forfeiture of property set forth in the version of R.C. 2933.41 in effect at the time the state filed its forfeiture motion is intended to be, or by its nature is, criminal and punitive, as opposed to civil and remedial, in character.

The determination of whether a forfeiture is civil and remedial, rather than criminal and punitive, is a matter of statutory construction. *Casalicchio, supra,* 58 Ohio St.3d at 182, 569 N.E.2d at 920–921. Classification of a forfeiture statute as either criminal or civil has proven to be a difficult distinction for courts to make. See, *e.g., United States v. Ward* (1980), 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742, 749; *United States v. One Assortment of 89 Firearms, supra.* Generally, a civil forfeiture is an *in rem* proceeding intended to protect the government from financial or actual loss, and a criminal forfeiture generally serves a punitive or deterrent purpose and is intended to " 'vindicate public justice.' " *United States v. A Parcel of Land with a Bldg. Located Thereon* (C.A.1, 1989), 884 F.2d 41, 43, citing *United States ex rel. Marcus v. Hess* (1943), 317 U.S. 537, 548–549, 63 S.Ct. 379, 386, 87 L.Ed. 443, 452.

The Ohio Supreme Court has previously addressed the question of whether a forfeiture statute is a criminal or civil sanction in two similar challenges to forfeiture statutes involving double jeopardy questions. In *Prescott, supra,* the Ohio Supreme Court determined that the forfeiture procedure set forth in R.C. 1531.20 is a civil penalty. In reaching this conclusion, the court found it relevant that the forfeiture provisions were not dependent upon a criminal conviction and were instituted against the property regardless of whether the property owner or a third party unlawfully used the property to be forfeited.

In *Casalicchio, supra,* the Ohio Supreme Court decided that the forfeiture procedure set forth in R.C. 2933.43 was a punitive forfeiture. The court was persuaded by the fact that the forfeiture of contraband was directly related to the commission of a crime and required a conviction of the underlying offense. Moreover, the court considered it persuasive that a forfeiture under R.C. 2933.43 protects innocent lienholders and property owners, who have not been convicted of the underlying offense, from a loss of rights with respect to the property in question.

In the case before us, the state initiated forfeiture proceedings under R.C. 2933.41(C)(2), based on its assertion that possession of the unlawfully transported Florida bobcat carcass in Ohio would violate R.C. 1531.02.

R.C. 1531.02 provides that "[n]o person shall possess or transport a wild animal which has been taken unlawfully outside the state." Although an Ohio bobcat is classified under Ohio law as an endangered species, and is therefore inherently unlawful to possess in Ohio, see Ohio Adm.Code 1501.31–23–01(A)(1) and (C), a Florida bobcat, which is not classified as an endangered species by the Ohio Administrative Code, is not inherently unlawful to possess in Ohio. The possession of a Florida bobcat is only unlawful in Ohio if it was not lawfully acquired and transported to Ohio in accordance with Florida's wildlife transportation laws. See Ohio Adm.Code 1501:31–23–01(F); R.C. 1531.02.

Because the bobcat carcass in question was the remains of a Florida bobcat that could be lawfully possessed in Ohio if it had been lawfully acquired outside and lawfully transported into Ohio, the state could deny Adams's right to possess the Florida bobcat carcass only if it was determined that he did not acquire or transport the carcass from Florida in conformity with the requirements of Florida law.

Although a forfeiture under R.C. 2933.41(C)(2) does not expressly require a criminal conviction to justify the forfeiture of the property, as does a criminal forfeiture under R.C. 2933.43, we find the forfeiture action brought under R.C. 2933.41(C)(2) in the present case to be dependent upon a factual determination that Adams brought the bobcat carcass into Ohio unlawfully. The forfeiture action brought pursuant to R.C. 2933.41(C) serves a punitive and deterrent function, rather than the remedial function of protecting the state against actual loss. We conclude that by initiating the forfeiture proceedings set forth in R.C. 2933.41(C), the state's attempt to deny Adams his right to possess the bobcat was necessarily a punitive action responsive to his alleged unlawful conduct of transporting and possessing an untagged Florida bobcat. As such, the forfeiture pursuant to R.C. 2933.41(C)(2) in the present case is a punitive forfeiture. See *Casalicchio, supra.*

Parenthetically, we should note that the utilization of the R.C. 2933.41 forfeiture procedure against property that became unlawful to possess because of its relation to unlawful activity is distinguishable from the use of the same procedure against property that is inherently unlawful to possess. A forfeiture action initiated pursuant to R.C. 2933.41 for property that is itself inherently unlawful to possess would not necessarily be classified as a punitive action. For example, the forfeiture of unlawful narcotics pursuant to R.C. 2933.41(D) would not be a punitive forfeiture, which carries with it double jeopardy implications.

Under those circumstances, the state would not be cutting off a person's right to possess the narcotics as a punitive measure, but would be doing so because the person never had a legal right to possess the property. Accordingly, not all forfeitures under R.C. 2933.41 need be classified as criminal and punitive in nature.

In the present case, because the forfeiture of the bobcat carcass pursuant to R.C. 2933.41(C)(2) was a punitive sanction that was initiated after the criminal complaint against Adams had been dismissed on speedy trial grounds, the forfeiture action violates the double jeopardy provisions of both the Ohio and United States Constitutions. Accordingly, the trial court erred in concluding that the forfeiture petition was not barred on double jeopardy grounds.

Adams's first assignment of error is sustained.

## III

Adams's second assignment of error is as follows:

"The trial court erred in concluding that the appellee's motion for forfeiture pursuant to R.C. 2933.41(C)(2) was timely filed."

Adams's second assignment of error is rendered moot under App.R. 12(A)(1)(c) by our holding with respect to his first assignment of error. Therefore, the second assignment of error is overruled.

## IV

Adams's third assignment of error is as follows:

"The trial court erred in concluding that possession of the bobcat carcass was unlawful."

Adams's third assignment of error is also rendered moot under App.R. 12(A)(1)(c) by our holding with respect to his first assignment of error. Therefore, the third assignment of error is overruled.

## V

Adams's fourth assignment of error is as follows:

"The appellee failed to bring a forfeiture action pursuant to R.C. 1531.20, and is accordingly barred from prosecution by operation of R.C. 1.51."

Adams's fourth assignment of error is rendered moot under App.R. 12(A)(1)(c) by our holding with respect to his first assignment of error. Therefore, the Fourth Assignment of Error is overruled. Although it is not necessary for the

disposition of this case, we will, however, address the question of law raised within the fourth assignment of error.

Adams contends that pursuant to the rule set forth in R.C. 1.51, the special provision for a forfeiture of wild animals set forth in R.C. 1531.20 prevails to the exclusion of the general forfeiture proceeding set forth in R.C. 2933.41. Specifically, Adams contends that because R.C. 1531.20 sets forth a forfeiture procedure that specifically applies to the forfeiture of property "used in the unlawful taking of wild animals" and the "illegal results of its use," the state could not proceed under the general forfeiture proceedings set forth in R.C. 2933.41. We do not agree.

R.C. 1.51 provides:

"If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provisions is the later adoption and the manifest intent is that the general provision prevail."

Based on the clear language of R.C. 1.51, this provision applies only if the general and special provisions are in conflict. We find no conflict between the forfeiture proceedings set forth in R.C. 2933.41 and in R.C. 1531.20.

First, the forfeiture proceeding set forth in R.C. 1531.20 is a civil forfeiture sanction that is implemented as a remedial sanction, *Prescott, supra*, whereas R.C. 2933.41(C) is a criminal, punitive forfeiture proceeding. Moreover, the forfeiture procedure set forth in R.C. 1531.20 is a means by which the state can seize property used in the commission of a crime and the results of an unlawful trapping. In contrast, the R.C. 2933.41 forfeiture procedure is an appropriate action to take when the state has property in its possession through means of a valid seizure and the property is no longer needed as evidence in the criminal prosecution. As such, the two forfeiture proceedings, one civil and one criminal, are applicable under different circumstances and impose two distinct types of sanctions.

Accordingly, the two procedures do not conflict with one another, and do not operate to the mutual exclusion of one another.

### VI

Adams's first assignment of error having been sustained, we reverse and vacate the judgment of the trial court declaring the bobcat carcass forfeited to the state of Ohio.

*Judgment reversed.*

WOLFF and GRADY, JJ., concur.