OPINION
{¶ 1} Appellant, John Norris, appeals from the March 10, 2003 judgment entry of the Ashtabula County Court, Western District, in which the trial court denied his motion to return property and granted the state's application to dispose of it.
 {¶ 2} On July 31, 2002, Deputy Brian N. Rose ("Deputy Rose") of the Ashtabula County Sheriff's Department arrived at 6874 North Ridge West, Geneva, Ohio, to investigate a complaint that there was a suspicious person outside the Tabernacle Church of God. Appellant was found sitting outside the church at a picnic bench with two dogs, a flashlight, handcuffs, a holster, a wallet, a pellet gun, a shotgun, and a policeman's badge. Appellant also claims that a belt buckle was seized as evidence. Appellant gave Deputy Rose three different stories as to why he was at the church. All of the stories were investigated and found to be fabrications. One of the stories was that he was protecting the church against theft, and he also indicated he had been rabbit hunting.[1] Consequently, appellant was arrested for criminal trespass. Deputy Rose also seized the property in appellant's possession, and it was taken in as evidence.
 {¶ 3} A criminal complaint was filed on August 1, 2002, with the Ashtabula County Court, Western District, charging appellant with criminal trespass, in violation of R.C. 2911.21(A)(1), a fourth degree misdemeanor. Thereafter, on December 31, 2002, the state amended the charge of criminal trespass to a charge of disorderly conduct, in violation of R.C. 2911.17(A)(5), a minor misdemeanor. On that same date, appellant entered a plea of guilty to the disorderly conduct charge, and the sentence imposed was a fine of fifty dollars.
 {¶ 4} On January 8, 2003, appellant filed a motion to release the property seized as evidence. On February 27, 2003, the state filed an application to dispose of the property. Subsequently, on March 4, 2003, the state filed a memorandum of law and a motion to dismiss appellant's motion for release of property. Appellant then filed a supplement to his motion for release of property and filed a response to the state's application to dispose of it. In an entry dated March 10, 2003, the trial court denied appellant's motion for the release of property and granted the state's application to dispose of it. Appellant moved to stay the trial court's order, which was granted pending the outcome of this appeal. Appellant timely filed the instant appeal and now raises a single assignment of error for our review:
 {¶ 5} "The trial court erred when overruling appellant's motion to release property and granting [the state's] motion to dispose of property."
 {¶ 6} For his lone assignment of error, appellant claims that the trial court erred in overruling his motion to release property and in granting appellee's motion to dispose it. Specifically, he contends that it was error to deny his motion because the state did not file a petition for forfeiture of property prior to the trial court imposing sentence. Thus, appellant argues that denying him his property violated the Double Jeopardy Clause of the United States Constitution by punishing him twice for the same crime since this additional penalty was not sought by the state prior to sentencing.
 {¶ 7} The Double Jeopardy Clauses of Section 10, Article I, of the Ohio Constitution and the Fifth Amendment to the United States Constitution "forbid punishing a defendant twice for the same offense." State v. Casalicchio (1991), 58 Ohio St.3d 178,183. "[T]he Double Jeopardy Clauses bar the state from seeking a new penalty to a crime after a defendant has been sentenced for that crime." Id.
 {¶ 8} Although R.C. 2933.41 is not a forfeiture statute, deprivation of appellant's right to possession of his property is as onerous as if the state had declared a forfeiture and, thus, R.C. 2933.41 must be strictly construed against the state. Statev. Lilliock (1982), 70 Ohio St.2d 23, 25. R.C. 2933.41 is a statute that governs the "disposition of property held by a law enforcement agency." Furthermore, a proceeding under R.C. 2933.41
is criminal in nature, but civil in form and, thus, is governed by the Rules of Civil Procedure. Lilliock at 25. This accords with the principle contained in Crim.R. 57(B), which directs courts to the civil rules when no procedure is specifically prescribed by the Criminal Rules. Id. Therefore, as with other appeals in civil matters, judgments supported by some competent, credible evidence going to all of the essential elements of the case will not be reversed by this court as being against the manifest weight of the evidence. In re Disposition of PropertyHeld by Geauga Cty. Sheriff (1998), 129 Ohio App.3d 676, 681, citing C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus.
 {¶ 9} Moreover, we note that R.C. 2933.41(D) does not require the state to file a petition for forfeiture of property prior to sentencing. In fact, R.C. 2933.41(D) states that: "[u]nclaimed or forfeited property in the custody of a law enforcement agency, other than contraband that is subject to the provisions of section 2913.34 or 2933.43 of the Revised Code, other than property forfeited under sections 2923.44 to 2923.47 or 2925.41
to 2925.45 of the Revised Code, and other than property that has been lawfully seized in relation to a violation of section2923.32 of the Revised Code, shall be disposed of on applicationto and order of any court of record that has territorial jurisdiction over the political subdivision in which the law enforcement agency has jurisdiction to engage in law enforcement activities * * *." (Emphasis added.)
 {¶ 10} In the instant matter, appellant argues that the state's failure to file a petition for the forfeiture of this property bars the state from now seizing the property. Appellant claims support for his position from the Casalicchio case. This court is not persuaded. In Casalicchio, the seizure involved a motor vehicle used in a drug transaction and was subject to the provisions of R.C. 2933.43(C) and not R.C. 2933.41. Here, the disposition of the property was subject to R.C. 2933.41(D), which does not contain a mandate that a petition shall be filed with the court. Instead, a court is only required to act when an "application" has been filed. Therefore, it is our view that there was no requirement that the state file an application promptly upon taking possession of the property as in some felony matters.
 {¶ 11} Furthermore, in the case at hand, since appellant was convicted of a misdemeanor offense, the state concedes that it is unable to procure a forfeiture pursuant to R.C. 2933.42 and R.C.2933.43. See Hamilton v. Callon (1997), 119 Ohio App.3d 759,760. However, the state did not bring a forfeiture action under R.C. 2933.42 and 2933.43; instead, it sought disposal of appellant's property under R.C. 2933.41(C), which provides that:
 {¶ 12} "[a] person loses any right that the person may have to the possession, or the possession and ownership, of property if any of the following applies:
 {¶ 13} "(1) The property was the subject, or was used in a conspiracy or attempt to commit, or in the commission, of an offense other than a traffic offense, and the person is a conspirator, accomplice, or offender with respect to the offense.
 {¶ 14} "(2) A court determines that the property should be forfeited because, in light of the nature of the property or the circumstances of the person, it is unlawful for the person to acquire or possess the property."
 {¶ 15} After the Supreme Court of Ohio decided Lilliock,
R.C. 2933.41(C) was amended, and now includes "if any of the following apply." "R.C. 2933.41(C) is a statute that prevents certain individuals from exercising a right to reclaim certain property under certain circumstances." State v. Selbak, 12th Dist. No. CA2002-06-139, 2003-Ohio-2688, at ¶ 18. Therefore, under R.C. 2933.41(C), the state must show either that the property was used in the commission of an offense other than a traffic offense, or that it is unlawful for the offender to possess the property in light of its nature or the circumstances of the offender. If the state can successfully satisfy either of these tests, appellant is unable to obtain possession of the property.
 {¶ 16} In the case at bar, appellant pleaded guilty to disorderly conduct, in violation of R.C. 2917.11(A)(5), which states that "[n]o person shall recklessly cause inconvenience, annoyance, or alarm to another by * * * [c]reating a condition that is physically offensive to persons or which presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender." Appellant created a condition that was physically offensive by trespassing on the Tabernacle Church of God with two dogs, a flashlight, handcuffs, a holster, a wallet, a belt buckle, a pellet gun, a shotgun, and a policeman's badge. He proceeded to give Deputy Rose three different stories as to why he was at the church, which turned out to be fabrications. One story appellant gave was that he was hired by the church to protect it against theft. Therefore, appellant placed himself in a position where he could have exercised his apparent authority to defend the church.
 {¶ 17} Accordingly, even though appellant was otherwise entitled to possession of the property seized, once he entered a plea of guilty to disorderly conduct and because some of the seized property "was the subject, or was used * * * in the commission" of the offense, appellant lost his possessory and ownership rights to that property. Hence, that property was considered unclaimed and must be disposed of pursuant to R.C.2933.41. We conclude that the trial court did not err in denying appellant's motion for release of property and granting the state's motion to dispose of some of it. However, the trial court's judgment should be modified and affirmed. It is our view that the wallet and the belt buckle should be returned to appellant.
 {¶ 18} For the foregoing reasons, appellant's sole assignment of error is not welltaken. The judgment of the Ashtabula County Court, Western District, is affirmed, but modified as to appellant's wallet and belt buckle.
Grendell, J., Rice, J., concur.
[1] We note that rabbit hunting is not in season in July.